35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eleazar BUSTOS-SALGADO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vidal CHAVEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Augustin ZUNIGA, aka Augustin Zuniga Angel, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fidencio CHAVEZ, aka Luis Carlos Gomez, aka El Chupon,
Defendant-Appellant.
 Nos. 93-30087, 93-30108, 93-30088, 93-30104, 93-30171
* and 93-30208.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 2, 1994.
Decided Aug. 30, 1994.
 
 Before: ALARCON, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This case involves the consolidated appeals of Eleazar Bustos-Salgado, Vidal Chavez, Fidencio Chavez, and Augustin Zuniga. Salgado pled guilty to using or carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1). Vidal Chavez pled guilty to using or carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1), and conspiracy to distribute over 500 grams but less than 2 kilograms of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). Fidencio Chavez pled guilty to engaging in a criminal enterprise, in violation of 21 U.S.C. Sec. 848. Zuniga pled guilty to distributing over 500 grams but less than 2 kilograms of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). Each filed an appeal. We affirm because the contentions raised on appeal lack merit.
 
 I. Eleazar Bustos-Salgado and Vidal Chavez
 A.
 
 3
 Salgado and Chavez contend that the district court lacked jurisdiction over the Government's motion to reconsider its conditional ruling suppressing the firearms. Specifically, they argue that the Government divested the district court of jurisdiction to reconsider this ruling by filing a notice of appeal from that order. We review de novo a district court's assumption of jurisdiction. United States v. Peralta, 941 F.2d 1003, 1010 (9th Cir.1991), cert. denied, 112 S.Ct. 1484 (1992).
 
 
 4
 At the suppression hearing conducted on February 3, 1993, the district court stated that the firearms "would not be admitted, unless there were, and I will allow, ... the government an opportunity to show, at trial, if they're able to, that there is a basis for [their] admission." The court commented that "the search warrants themselves do not show a basis for, do not establish one of the items to be seized is a firearm." The court added that "at this juncture, the firearms would not be admissible, without the showing" of some "constitutionally permissible basis" for admitting them. During the same proceedings, the Government orally moved for reconsideration of this conditional ruling. The district court agreed to hear further testimony concerning the admissibility of the firearms immediately before trial or "right after jury selection" on February 8, 1993. No order was entered with regard to the motion to suppress the firearms until February 24, 1993.
 
 
 5
 Concerned that the district court might not have an opportunity to hear the motion for reconsideration before the jury was impaneled and jeopardy attached, the Government delivered a notice of appeal from the suppression ruling to the clerk's office on February 5, 1993. Salgado and Chavez argue that the Government filed this appeal on February 5, 1993, thereby barring the district court from entering an order denying the motion to suppress. We disagree.
 
 
 6
 The record reflects that when the Government presented the notice of appeal to the clerk's office, the clerk initially stamped the document as "filed." Thereafter, the clerk crossed out the word "filed" and wrote "lodged" on the notice of appeal. The district court's docket reflects that the notice of appeal was lodged with the district court on February 5, 1993.
 
 
 7
 The word "lodge," as it is commonly understood in this circuit, refers to the temporary acceptance of a document by the clerk pending a determination whether it should be filed. See Webster's New Collegiate Dictionary 670 (1979) (defining "lodge" as "to provide temporary quarters" or "to deposit for safeguard or preservation"). We have previously acknowledged the distinction between lodging a document with the clerk's office and filing a document with the court. See, e.g., United States v. $29,959.00 U.S. Currency, 931 F.2d 549, 551 (9th Cir.1991) (noting that the Government lodged a proposed judgment which was filed several days later); Boudette v. Barnette, 923 F.2d 754, 755 & 756 n. 4 (9th Cir.1991) (noting that a complaint was lodged one day, but filed a month later). A "lodged" notice of appeal has no legal effect unless and until it is filed by the clerk.
 
 
 8
 Because the district court agreed to reconsider its conditional ruling suppressing the firearms immediately after its oral statement of its intended decision, the time allotted for the filing of an appeal was tolled until the district court entered its judgment on the issue. United States v. Dieter, 429 U.S. 6, 7-8 (1976) (per curiam). Accordingly, the clerk correctly treated the Government's appeal as lodged rather than filed. The district court did not lose its jurisdiction to reconsider its tentative order when the clerk lodged, but did not file, the Government's protective notice of appeal.
 
 B.
 
 9
 Salgado and Chavez also contend that the district court erred by ruling the firearms seized from their homes were admissible because the seizure of the weapons was conducted without probable cause to believe they were evidence of a crime. The Government argues that the firearms are admissible because they were observed in plain view during the lawful execution of a search warrant.
 
 
 10
 Under the plain view doctrine, the seizure of evidence not specifically authorized in a search warrant may be lawfully admitted in a criminal proceeding if: (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed;" (2) the incriminating character of the object was immediately apparent; and (3) the officer had "a lawful right to access of the object itself." Horton v. California, 496 U.S. 128, 136-37 (1990). In the district court, Salgado and Chavez argued that the weapons seized in plain view were not admissible because they were not mentioned in the search warrant. Before this court, they have limited their attack on the admissibility of the firearms to the question of whether it was "immediately apparent" that the shotgun and the pistol were evidence of a crime.
 
 
 11
 Case Agent David Bedford testified that he believed there was a close connection between drug dealing and the possession of a weapon. He testified that "based on the amount of money that these individuals were carrying or had in their possession, as well as the amount of drugs ... it's very common for drug dealers to ... have guns or backup protection there to secure their interest in their business." Agent Bedford further testified that "[b]ased on my experience, I honestly can not recall a case that I have investigated where firearms were not used or carried by the people we were investigating in drug deals or drug crimes." The opinion of Agent Bedford is an important factor to be considered in determining whether the incriminating character of the shotgun and the pistol were immediately apparent. See United States v. Seybold, 726 F.2d 502, 504 (9th Cir.1984) ("We have repeatedly found the opinions of experienced law enforcement agents highly important in making probable cause determinations.").
 
 
 12
 Moreover, we have previously recognized the connection between drugs and weapons in the narcotics business. United States v. Simpson, 10 F.3d 645, 647 (9th Cir.1993). In Simpson, we held that "[b]ecause of the close relationship between drugs and firearms in the narcotics trade, the plain view seizure of firearms as evidence of narcotics offenses has been supported even when firearms are not specifically named in the search warrant." Id. (citation omitted).
 
 
 13
 In the case at bar, the officers seized a sawed-off shotgun from Salgado's house. Because sawed-off shotguns are contraband, it was "immediately apparent" that it was incriminating evidence. Therefore, the warrantless seizure of the shotgun was legal. The officers also seized a nine millimeter pistol from Chavez's house in a bedroom dresser drawer. This pistol was admissible under our decision in Simpson. See also United States v. Negrete-Gonzales, 966 F.2d 1277, 1284 n. 1 (9th Cir.1992) (holding that a pistol seized from a bedroom dresser drawer was admissible pursuant to the plain view doctrine as evidence to support the defendant's involvement in drug-related activities).
 
 C.
 
 14
 In a single sentence in his brief, Salgado contends he had standing to challenge the search of a coconspirator's vehicle. Salgado does not set forth any argument or cite any authority to support his contention. Nor does he refer us to portions of the record that demonstrate that he had a property interest or a reasonable expectation of privacy in the contents of the vehicle, without which he cannot establish standing. United States v. Padilla, 113 S.Ct. 1936, 1939 (1993). We therefore reject Salgado's contention that he had standing to challenge the search.
 
 II. Fidencio Chavez
 A.
 
 15
 Chavez first contends that Santiago Juarez, the attorney he retained after he was arrested and who represented him through the entry of his guilty plea, rendered ineffective assistance. We review ineffective assistance of counsel claims de novo. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991).
 
 
 16
 To prevail on a claim of ineffective assistance of counsel, Chavez must demonstrate that Juarez's actions were outside the wide range of professionally competent assistance and that he was prejudiced by reason of Juarez's actions. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). This standard is "rigorous" and "highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986). Chavez must overcome "a strong presumption" of competency in order to succeed on his claim. Smith v. Ylst, 826 F.2d 872, 875 (9th Cir.1987), cert. denied, 488 U.S. 829 (1988). Chavez has not overcome this presumption.
 
 
 17
 Chavez contends that his counsel's conduct was unreasonable. chavez alleges that he had inadequate contact with Juarez, that Juarez "appeared in court smelling of alcohol," and that Juarez did not explain to him the nature of the charges against him or his obligations under the plea agreement.
 
 
 18
 The record does not support Chavez's contentions. The record indicates that Juarez met with Chavez no fewer than nine times in the three and a half month period between the date he first met with Chavez in jail and the date Chavez entered his guilty plea. In addition, Juarez spoke with Chavez by phone.
 
 
 19
 With regard to the accusation that Juarez smelled of alcohol, Chavez relies upon his affidavit he submitted in support of his motion for continuance. This affidavit does not indicate that Juarez had alcohol on his breath on the date Chavez entered his guilty plea. Rather, Chavez simply stated that "[o]n one occasion when we went to Court, I could smell alcohol about Mr. Juarez." Furthermore, Chavez made no showing that Juarez's faculties were affected by the consumption of alcohol on that date.
 
 
 20
 Finally, Chavez's contention that he did not understand the charges or the plea agreement as a result of Juarez's purportedly ineffective representation is belied by the record. Before the district court accepted Chavez's guilty plea, it questioned Chavez at length as to whether he had enough time to consult with his attorney to discuss the charges against him, whether he was satisfied with his attorney's advice, whether he understood the charges to which he intended to plead guilty, and whether he knew and understood the terms of the plea agreement. Chavez answered all of these questions in the affirmative.
 
 
 21
 The record on appeal does not indicate that Juarez rendered ineffective assistance. Any evidence, if such exists, that Juarez was impaired by the consumption of alcohol at the time Chavez entered his plea can be presented on a petition for habeas corpus pursuant to 28 U.S.C. Sec. 2255. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991) ("Where the record on appeal is not adequate to determine whether there has been a deprivation of the sixth amendment's protection, '[t]he customary procedure for challenging the effectiveness of defense counsel ... is by collateral attack on the conviction under 28 U.S.C. Sec. 2255.' ") (citation omitted).
 
 B.
 
 22
 Chavez asserts the district court erred by denying his motion to continue the sentencing hearing. We review a district court's decision to deny a motion for continuance for an abuse of discretion. United States v. Donaghe, 924 F.2d 940, 943 (9th Cir.), cert. denied, 112 S.Ct. 204 (1991). Moreover, the district court's decision "must be evaluated in light of concerns that a denial of a continuance may implicate sixth amendment rights." Id. Under these circumstances, the court's discretion is reviewed by balancing several factors: "whether the continuance would inconvenience witnesses, the court, counsel, or the parties; whether other continuances have been granted; whether legitimate reasons exist for the delay; whether the delay is the defendant's fault; and whether a denial would prejudice the defendant." Id. (internal quotation omitted). Furthermore, "[t]o demonstrate reversible error, [Chavez] must show that the denial resulted in actual prejudice to his defense." United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989) (internal quotation omitted).
 
 
 23
 Chavez contends that none of these factors "mitigate against granting the continuance." We disagree. First, Chavez inconvenienced the court and the Government by filing the motion only two days before the date fixed for sentencing. Moreover, Chavez's frequent counsel changes contributed to his need for additional time. As the district court stated: "I would have to indicate that I simply wonder if, two weeks from now, Mr. Chavez would have another attorney who would be asking again for an opportunity to review the underlying documents. And I only point that out because there seems to be somewhat of a pattern...."
 
 
 24
 Finally, Chavez failed to demonstrate that the "denial resulted in actual prejudice to his defense." Shirley, 884 F.2d at 1134. The purported reason Chavez needed extra time was so that his attorney could prepare a motion to withdraw his guilty plea. Such a motion was, in fact, presented and denied. Chavez has not demonstrated that, had he been afforded additional time, this motion would have been successful. Chavez merely cites United States v. Castello, 724 F.2d 813, 814 (9th Cir.), cert. denied, 467 U.S. 1254 (1984), for the proposition that motions to withdraw guilty pleas which are presented before sentencing should be granted freely. Chavez fails to recognize that, when a number of codefendants have already been sentenced (as here), a guilty plea may only be withdrawn upon a showing of manifest injustice. United States v. Ramos, 923 F.2d 1346, 1358 (9th Cir.1991). Chavez has not demonstrated that the denial of the continuance caused him to suffer manifest injustice.
 
 
 25
 In addition, denying the motion for continuance did not prejudice Chavez with regard to the length of his sentence. Chavez was subject and was sentenced to the mandatory minimum sentence of twenty years, as provided by 21 U.S.C. Sec. 848(a). Chavez does not suggest any legitimate basis in law or in fact why this sentence might be inappropriate. The district court did not abuse its discretion by denying Chavez's motion to continue his sentencing hearing.
 
 C.
 
 26
 Chavez contends the district court erred by denying his motion to compel the Government to file a substantial assistance motion under Sentencing Guideline section 5K1.1. We review the district court's decision to deny the motion to compel for clear error. United States v. Sharp, 941 F.2d 811, 816 (9th Cir.1991).
 
 
 27
 Chavez argues that because he provided the Government with the information it requested, it was required to make a motion for downward departure under section 5K1.1. Chavez has not set forth the information he provided to the Government. The Government states that the minimal information Chavez did provide was not accurate or truthful. Thus, Chavez failed to demonstrate that the Government did not adhere to the terms of the plea agreement. Under that agreement, the Government possessed the sole authority to determine if Chavez earned a section 5K1.1 motion. As we have previously noted, vesting the discretion to make a section 5K1.1 motion in the prosecutor is proper because he or she is "the only individual who knows whether a defendant's cooperation has been helpful." United States v. Ayarza, 874 F.2d 647, 653 (9th Cir.1989), cert. denied, 493 U.S. 1047 (1990). The district court's decision to deny Chavez's motion to compel the Government to file a substantial assistance motion was not clearly erroneous.
 
 III. Augustin Zuniga
 
 28
 Zuniga contends that the district court erred by granting him only a two-point, rather than a three-point, reduction for acceptance of responsibility, and by denying him a two-point reduction for his role as a minimal participant. Because any error which might have been committed by the district court did not affect Zuniga's sentence, we do not reach these contentions. See United States v. Beltran-Felix, 934 F.2d 1075, 1077 (9th Cir.1991) ("Since defendant's sentence of five years was the mandatory minimum sentence under 21 U.S.C. Sec. 841(b)(1)(B)(viii), any error the district court may have committed in calculating defendant's sentence under the guidelines did not harm defendant."), cert. denied, 112 S.Ct. 955 (1992).
 
 
 29
 Under 21 U.S.C. Sec. 841(b)(1)(B)(ii), a person found guilty of distributing more than 500 grams of cocaine "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." "[W]hen a statute requires a sentence different than that set by the guidelines, the statute controls." United States v. Sharp, 883 F.2d 829, 831 (9th Cir.1989). Thus, reducing Zuniga's offense level in accordance with his contentions from 24 to 21, and his corresponding guideline range from 51-63 months to 37-46 months, would not affect the ultimate statutory minimum five year sentence imposed.
 
 
 30
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3